Fill in this information to identify the case:

Debtor 1: Bobby Damon Ingram

Debtor 2 (Spouse, if filing):

United States Bankruptcy Court for the: Northern District of Georgia (State)

Case number: 22-50570-SMS

Official Form 427

# Cover Sheet for Reaffirmation Agreement

12/15

Anyone who is party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

## Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?** Farm Bureau Bank
Name of the creditor

**2. How much is the debt?**
On the date that the bankruptcy case is filed  $ 53,283.70
To be paid under the reaffirmation agreement  $ 53,283.70
$918.04 per month for 66 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**
Before the bankruptcy case was filed   4.9000%
Under the reaffirmation agreement   4.9000%   ☒ Fixed rate   ☐ Adjustable rate

**4. Does collateral secure the debt?**
☐ No
☒ Yes.  Describe the collateral. 2019 Mercedes-Benz Comm Sprinter 3500XC, VIN: WDAPF4CD9KP178568
Current market value  $ 50,425.00

**5. Does the creditor assert that the debt is nondischargeable?**
☒ No
☐ Yes.  Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from *Schedule I: Your Income* (Official Form 106I) and *Schedule J: Your Expenses* (Official Form 106J), fill in the amounts.**

Income and expenses reported on Schedule I and J:

6a. Combined monthly income from line 12 of Schedule I  $ 8,290.00
6b. Monthly expenses from line 22c of Schedule J  - $ 8,273.00
6c. Monthly payments on all reaffirmed debts not listed on Schedule J  - $ 0
6d. **Scheduled net monthly income**  $ 17.00
Subtract lines 6b and 6c from 6a.
If the total is less than 0, put the number in brackets.

Income and expenses stated on the reaffirmation agreement:

6e. Monthly income from all sources after payroll deductions  $ 8,290.00
6f. Monthly expenses  - $ 8273
6g. Monthly payments on all reaffirmed debts not included in monthly expenses  - $ 0
6h. **Present net monthly income**  $ 17
Subtract lines 6f and 6g from 6e.
If the total is less than 0, put the number in brackets.

Official Form 427                Cover Sheet for Reaffirmation Agreement                Page 1
3280-N-1963

Debtor 1  Bobby (First Name)  Damon (Middle Name)  Ingram (Last Name)   Case number (if known)  22-50570-SMS

| # | Question | Answer | Details |
|---|---|---|---|
| 7. | Are the income amounts on lines 6a and 6e different? | ☒ No ☐ Yes | Explain why they are different and complete line 10. |
| 8. | Are the expense amounts on lines 6b and 6f different? | ☒ No ☐ Yes | Explain why they are different and complete line 10. |
| 9. | Is the net monthly income in line 6h less than 0? | ☒ No ☐ Yes | A presumption of hardship arises (unless the creditor is a credit union). Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10. |
| 10. | Debtor's certification about lines 7-9. If any answer on lines 7-9 is Yes, the debtor must sign here. If all the answers on lines 7-9 are No, go to line 11. | | I certify that each explanation on lines 7-9 is true and correct.<br><br>✗ _____  ✗ _____<br>Signature of Debtor 1    Signature of Debtor 2 (Spouse Only in a Joint Case) |
| 11. | Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No ☒ Yes | Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>☐ No<br>☒ Yes |

## Part 2: Sign Here

**Whoever fills out this form must sign here.**

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

✗ /S/ Alexander Deegan
Signature

Date 2/23/2022
MM / DD / YYYY

Alexander Deegan
Printed Name
Craig A. Edelman
John Rafferty
Mukta Suri
Natalie Lea
14841 Dallas Parkway, Suite 425
Dallas, Texas 75254
(972) 643-6600
(972) 643-6698
E-mail: consumer7@nationalbankruptcy.com

Check one:
☐ Debtor or Debtor's Attorney
☐ Creditor or Creditor's Attorney
☒ Creditor's Authorized Agent

Official Form 427    Cover Sheet for Reaffirmation Agreement    Page 2
3280-N-1963

B2400A (12/15)

> **Check One.**
> ☐ **Presumption of Undue Hardship**
> ☒ **No Presumption of Undue Hardship**
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In Re:  Bobby Damon Ingram | § | Case No. 22-50570-SMS |
| Debtor | § | Chapter 7 |
| | § | |
| | § | |

## REAFFIRMATION DOCUMENTS

**Name of Creditor: Farm Bureau Bank**

☐  Check this box if Creditor is a Credit Union

### PART I.     REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision.  Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A.  Brief description of the original agreement being reaffirmed: Motor Vehicle Lien

B.  ***AMOUNT REAFFIRMED***:                                                                                                   $53,283.70

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before February 8, 2022, which is the date of the Disclosure Statement portion of this form (Part V).

   *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C.  The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is 4.9000%.

   *See definition of "Annual Percentage Rate" in Part V, Section C below.*

   This is a *(check one)*         ☒ Fixed Rate               ☐ Variable Rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

3280-N-1963

B2400A (12/15) Page 2

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☒   $ 918.04   per month for   66   months starting on   February 10, 2022

   **\*On the maturity date, all outstanding amounts owed under this reaffirmation agreement shall be immediately due and payable.**

☐   Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

   _____
   _____
   _____

E. Describe the collateral, if any, securing the debt:

   Description:  2019 Mercedes-Benz Comm Sprinter 3500XC, VIN: WDAPF4CD9KP178568

   Current Market Value:       $50,425.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

   ☒  Yes.   What was the purchase price for the collateral?   $58,969.00
   ☐  No.    What was the amount of the original loan?        $_____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance Due *(including fees and costs)* | $53,283.70 | $53,283.70 |
| Annual Percentage Rate | 4.9000% | 4.9000% |
| Monthly Payment | $918.04 | $918.04 |

H. ☐  Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

   _____
   _____

**PART II.  DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

A. Were you represented by an attorney during the course of negotiating this agreement?
   Check one.   ☒  Yes        ☐  No

B. Is the creditor a credit union?
   Check one.   ☐  Yes        ☒  No

3280-N-1963

B2400A (12/15) Page 3

C. If your answer to EITHER question A. or B. above is "No" complete 1. and 2. below.

   1. Your present monthly income and expenses are:

      a. Monthly income from all sources after payroll deductions                  $8,290.00
         (take-home pay plus any other income)

      b. Monthly expenses                                    $ 7371
         (including all reaffirmed debts except this one)

      c. Amount available to pay this reaffirmed debt                        $ 919
         (subtract b. from a.)

      d. Amount of monthly payment required for this reaffirmed debt             $918.04

*If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

   2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

    ☒ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

    ☐ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:
       _____
       _____
       _____

    Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

    ☒ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

   *Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

3280-N-1963

B2400A (12/15) Page 4

## PART III.    CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I (We) hereby certify that:

(1).  I (We) agree to reaffirm the debt described above.

(2).  Before signing this Reaffirmation Agreement, I (we) read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3).  The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4).  I am (We are) entering into this agreement voluntarily and am (are) fully informed of my (our) rights and responsibilities; and

(5).  I (We) have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign):

Date  Feb 15 2022    Signature  *Bobby Damon Ingram*
                                 Bobby Damon Ingram

Date  _____    Signature  _____

**Reaffirmation Agreement Terms Accepted by Creditor**:

| Creditor | Farm Bureau Bank | 14841 Dallas Parkway, Suite 425, Dallas, Texas 75254 |
|---|---|---|
| | *Print Name* | *Address* |

| Alexander Deegan | | |
|---|---|---|
| *Print Name of Representative* | /S/ Alexander Deegan | 2/23/2022 |
| Craig A. Edelman | *Signature* | *Date* |
| John Rafferty | | |
| Mukta Suri | | |
| Natalie Lea | | |

## PART IV.    CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is(are) able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date Feb 15 2022 Signature of Debtor's Attorney  *Christopher Sleeper*
              Print Name of Debtor's Attorney    Christopher J. Sleeper

4

3280-N-1963

B2400A (12/15) Page 5

## PART V.  DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, detailed in Part B below, are not completed, the reaffirmation agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the reaffirmation agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this Reaffirmation Documents package requiring signature, have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

3280-N-1963

B2400A (12/15) Page 6

6. **When will this reaffirmation agreement be effective?**

   a. **If you *were represented* by an attorney during the negotiation of your reaffirmation agreement**

      i. **if the creditor is not a Credit Union**, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship in which case the agreement becomes effective only after the court approves it;

      ii. **if the creditor is a Credit Union**, your reaffirmation agreement becomes effective when it is filed with the court.

   b. **If you *were not represented* by an attorney during the negotiation of your reaffirmation agreement**, the reaffirmation agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing, at which time the judge will review your reaffirmation agreement. If the judge decides that the reaffirmation agreement is in your best interest, the agreement will be approved and will become effective. However, if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your reaffirmation agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the reaffirmation agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

## B. INSTRUCTIONS

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney section (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your reaffirmation agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B2400B to do this.

B2400A (12/15) Page 7

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs arising on or before the date you sign this agreement that you are agreeing to pay. Your credit agreement may obligate you to pay additional amounts that arise after the date you sign this agreement. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this agreement.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage Rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

3280-N-1963



# CONSUMER LOAN AGREEMENT
## Promissory Note and Security Agreement

**LOAN DATE:** 3/11/2021

The parties and their addresses are:
**LENDER:**
Farm Bureau Bank FSB
P.O. Box 33427
San Antonio, TX 78265-3427
Telephone: 1.800.492.3276

**BORROWER:**
BOBBY D INGRAM



**Your Interest Rate:** 4.9%

The Pronouns "you"; "your" and "Borrower refer to each borrower obligated under this Consumer Loan Agreement Promissory Note and Security Agreement ("Loan Agreement"), individually and together with their heirs, successors and assignees, and each other person or legal entity who agrees to pay this Loan Agreement. "Farm Bureau Bank," "we," "us" and "our" refer to Farm Bureau Bank FSB, with its participants or syndicates, successors and assignees, any person or company that acquires an interest in the loan made under this Loan Agreement ("Loan"), and any other holder of this Loan Agreement. "Collateral" and "Other Collateral" have the meaning given in the Security Interest section of this Loan Agreement. "Loan Application" means the loan application submitted by you to Farm Bureau Bank in connection with this Loan Agreement.

### DISCLOSURES PURSUANT TO THE TRUTH-IN-LENDING ACT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 4.943% (e) | $ 9,968.00 (e) | $ 58,894.00 (e) | $ 68,862.00 (e) |

You have the right to receive, at this time, an itemization of the Amount Financed.
☐ I want an itemization.

**Your payment schedule will be:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE **MONTHLY** |
|---|---|---|
| 74 | $ 918.16 (e) | 5/10/2021 (e) |
| 1 | $ 918.16 (e) | First payment may change depending on date of origination. |

**Prepayment:** If you pay off early, you may have to pay a penalty.
**Security:** You are giving a security interest in : 2019 MERCEDES-BENZ COMM SPRINTER 3500XC CHASSIC CAB 170 WDAPF4CD9KP178568

**Filing Fee:** $ 75.00
**Late Charge:** If a payment is received more than 10 days late, you will be charged 5.00% of the Payment Amount ($35 minimum, $100 maximum) as a late charge, but only once for each late payment.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.
(e) means an estimate.

**Estimated and Final Disclosures:** Each of the disclosures of the following items in the above Truth in Lending Disclosure are estimates: Annual Percentage Rate, Finance Charge, Amount Financed, Total of Payments, and the Amount of Payments, and When Payments Are Due stated in the payment schedule. These items are estimated because we do not know at this time when you will finalize the purchase of your collateral or the final amount of the Loan that you will receive from us to finance that purchase and the purchase of any other property or products.

**LOAN AMOUNT; Signing the Funding Form:** When you finalize the purchase of your collateral, you will be required to sign and complete the Funding Form that shows your "Amount to Seller," which is the amount of the Loan that you will be obtaining from us for the purchase of your collateral and other property from the Seller, as well as a description of the specific motor vehicle or other property that will be Collateral for your Loan. Your total "Loan Amount" will equal the Amount to Seller plus any amounts you agree to pay for Major Mechanical Protection and Guaranteed Asset Protection as specified below, and the date you finalize the purchase of your motor vehicle will be used to prepare a final, non-estimated Truth in Lending Disclosure that we will send to you. By signing the Funding Form, you will be agreeing to the Loan Amount and that that motor vehicle and other property or products you are purchasing constitutes Collateral.

**SECURITY INTEREST:** As security for payment and performance of all obligations under this Loan Agreement and extensions and renewals thereof, you grant Farm Bureau Bank a security interest in (1) the motor vehicle or motor vehicles and other property described as "Collateral" in the Funding Form that you sign, together with all accessions and other included parts and accessories (collectively, "Collateral"), (2) any and all Major Mechanical Protection or Guaranteed Asset Protection contracts that you choose

1 of 4

Initial(s) BI



in the Optional Collateral Protection Products section of this Loan Agreement and that we finance for you (collectively, "Other Collateral"), and (3) all proceeds of the foregoing, including any refunds of premiums or charges from any Major Mechanical Protection and Guaranteed Asset Protection contracts. This security interest secures all sums which may become due under this Loan Agreement as well as any modifications, extensions, renewals, amendments, or refinancing of this Loan Agreement and any and all other of your obligations and accounts with Farm Bureau Bank now and in the future. You agree to immediately cause Farm Bureau Bank to be named as the only lien holder on any motor vehicle certificate of title relating to the Collateral and that Farm Bureau Bank may hold the certificate of title until all amounts owed under this Loan Agreement are paid. You agree to pay any and all fees associated with the security interest and lien perfection of your Collateral, which may include, taxes, fees and penalties without limit.

**PROMISE TO PAY:** For value received, you promise and agree, upon signing this Loan Agreement and the Funding Form (see above), to pay to the order of Farm Bureau Bank, a Federal savings bank, its successors and assignees, pursuant to this Loan Agreement, at Farm Bureau Bank's Operation Center mailing address of P.O. Box 33427, San Antonio, Texas, 78265-3427, in lawful money of the United States of America, the principal sum consisting of the Loan Amount and interest at the rate specified above each day on all unpaid principal from the date your Loan is funded ("Loan Date") until paid. The Loan will be considered funded when this Loan Agreement is accepted by Farm Bureau Bank and the Loan proceeds are paid out. Any amount assessed or collected as interest under the terms of this Loan Agreement will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is applicable.

**PAYMENTS**: The principal and interest of this Loan are due and payable in monthly installments of $ 918.16 (the "Payment Amount"), beginning on 5/10/2021, and thereafter on the same day or if such day is not banking business day , on the next banking business day. On the final payment date (the "Maturity Date"), all principal, fees and interest remaining unpaid shall be immediately due and payable. The Payment Amount shall be in an amount sufficient to fully amortize the Loan Amount over the period commencing on the first payment due date and ending on the Maturity Date, using the actuarial method and an Annual Percentage Rate of 4.943 % (the "Annual Percentage Rate")(computed on the basis of a 365 or 366-day year, as applicable, actual days elapsed). ). Each payment received shall be credited first to interest, then to any applied third-party payments, then to scheduled principal, then to fees due, and the remainder to unscheduled principal. Payments made prior to scheduled payment due dates will advance the payment due date up to two (2) months. Any additional payments will be applied to fees due (if applicable) then principal and will not advance the payment due date. Partial payments will be applied at our discretion unless prior arrangements are made with Farm Bureau Bank. A payment shall not be considered to have been made until the payment is received either pursuant to Farm Bureau Bank's Automated Payment Option or at an address so designated by Farm Bureau Bank.

**SIMPLE INTEREST CONTRACT:** This is a simple interest contract. The finance charge is calculated each day based on the unpaid principal balance of the Loan using the Annual Percentage Rate. As a result of this daily calculation the finance charge may vary depending on the date which your payments are received by Farm Bureau Bank. Any variance in the rates could affect the Payment Amount of your final payment(s). For example, early payments would act to reduce the Payment Amount of your final payment(s) because there would be less finance charges accrued on your Loan, while late payments would act to increase the Payment Amount of your final payment because more would be accrued on your Loan. The Payment Amount of your final payment will also vary depending on the number of days prior to your first payment due date. The number of days to your first payment due date will be within 90 days of the date you sign this Loan Agreement; depending on the Loan Date and the payment due date that you selected in your Loan Application. A shorter period before your first payment due date will result in a smaller Payment Amount of your final payment(s), because less finances charges will accrue on your Loan. After you make your final payment, Farm Bureau Bank will send your refund check for any amount Farm Bureau Bank owes you, if such amount is $20.00 or more to offset the cost associated with the transaction.

**LATE CHARGES AND RETURNED PAYMENT CHARGES:** In addition to interest or other finance charges, you agree that you will pay the following additional fees based on your method and pattern of payment. If a payment is received more than 10 days late, you will be charged 5.00% of the required Payment Amount ($35 minimum and $100 maximum) as a **Late Charge**, which you agree to pay promptly, but only once for each late payment. You also agree to pay a fee not to exceed $20.00 for each check, negotiable order of withdrawal or draft you issue in connection with this Loan that is returned because it has been dishonored.

**PREPAYMENT PENALTIES:** You may prepay this Loan in full or in part at any time. If you prepay in this Loan in full during the first 12 months from the Note Date, you will be subject to a prepayment penalty of $150.00. If you are a member of the Armed Forces or a dependent of a member of the Armed Forces, you may prepay this Loan in full or in part at any time and will not be required to pay a prepayment penalty.

**COVENANTS:** You covenant and agree with Farm Bureau Bank that, so long as this Loan Agreement is in effect:

(1) **Loan Purpose and Use of Proceeds:** This Loan is a consumer loan transaction. You agree to use the proceeds of this Loan only for (i) refinancing of an existing loan, (ii) purchase of new or used Collateral from a seller, or purchase of new or used Collateral from a private party (in the United States). Loan proceeds may also be used for other costs incurred in connection with the Collateral including tax, title, license, registration or lien filing fees, collateral protection products or extended warranty (service) contracts, and any other costs or fees normally associated with the Collateral. Disbursements for any other purpose must be pre-approved by Farm Bureau Bank before this Loan Agreement is effective.
(2) **Use of Collateral:** You agree that only you will be listed as guarantor(s) on the Collateral title, you will keep the Collateral free of all liens and taxes, and you will not use the Collateral or permit the Collateral to be used improperly, illegally or for hire. Collateral for one Loan may be used to secure any and all other obligations and accounts with Farm Bureau Bank, now and in the future.
(3) **Collateral Location:** You agree not to sell or transfer the Collateral or to remove the Collateral from the United States for more than 30 days without the prior written approval of Farm Bureau Bank and you will notify us immediately if you change your permanent address or the address of where the Collateral is regularly located. You agree to keep the Collateral property in your possession at your address.
(4) **Insurance:** You agree to maintain comprehensive insurance on the Collateral during the entire time that this Loan is outstanding. You agree to have Farm Bureau Bank named as loss payee under any such insurance policy. You agree to immediately send copies of all insurance policies on the Collateral to Farm Bureau Bank if so requested by us. If you fail to keep the Collateral insured, Farm Bureau Bank may obtain insurance to protect its interest in the Collateral. This insurance may include coverage not originally required of you, and the insurance may be written by a company other than one you would choose and may be at a higher rate than you could obtain if you purchased the insurance.
(5) **Express Consent to Contact You:** By providing Farm Bureau Bank with your telephone number, mobile phone number, number of any other wireless device, or email address, you expressly consent to receive calls and/or email notification from Farm Bureau Bank to include reminders, offers, products and services. These calls may use an automatic telephone dialing system, prerecorded messages, artificial voice messages calls, or text messages. Farm Bureau Bank may use your email to communicate with you, to send information that you may have requested, and to send additional loan documentation and other products or services provided by Farm Bureau Bank. This express consent applies to each telephone number or email address that you provide to us now or in the future and permits such calls or emails regardless of their purpose. These calls and messages may incur access fees from your cellular provider. You further agree that in a regular course of our business we may monitor, and record phone calls conversations made or received by our employees or our agents. Similarly, we may monitor and record e-mail or conversations on our website between you and our employee or agents. We may contact you by telephone or connection with the account directly through an agent-for example, to collect amounts owed on the account, to notify you or potential fraudulent transaction on your account or for other accounts servicing purpose.

**DEFAULT:** You will be in default ("Default if any of the following events (known separately and collectively as an "Event of Default") occur:

(1) **Payments.** You fail to make a payment in full when due.
(2) **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against you or any joint applicant or guarantor of this Loan Agreement or any other obligations you have with us.
(3) **Judgment.** You fail to satisfy or appeal any judgment against you.
(4) **Forfeiture.** The Collateral property is used in a manner or for a purpose that threatens confiscation by a legal authority.
(5) **Failure to Perform.** You fail to perform any condition or to keep any promise or covenant of this Loan Agreement, including without limitation your agreement to cause Farm Bureau Bank to be named as sole lien holder on the certificate of title relating to the Collateral.
(6) **Other Documents.** A default occurs under the terms of any other agreement or document evidencing, securing, or otherwise relating to this Loan Agreement (the "Loan Documents").
(7) **Misrepresentation.** You make any oral or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.
(8) **Property Transfer.** You transfer all or a substantial part of your money or property.
(9) **Insecurity.** We determine in good faith that a material adverse change has occurred in your financial condition from the conditions set forth in your most recent financial statement before the date of this Loan Agreement or that the prospect for payment or performance of the Loan is impaired for any reason.
(10) **Name Change.** You change your name or assume an additional name without notifying us before making such change.
(11) **Other Agreements with Farm Bureau Bank:** You fail to make a payment in full when due on any other Farm Bureau Bank obligation, and such principal and/or interest due remains unpaid for more than ten (10) days after the due date, or you otherwise are in default on any other debt or agreement you have with us.

**REMEDIES FOR DEFAULT:** If you are in Default under any provisions of this Loan Agreement, we may demand immediate payment of all amounts owed under this Loan Agreement and repossess the Motor Vehicle Collateral with the requisite legal notice and as allowed by law. If we take the motor vehicle, any accessories, equipment and replacement parts will stay with the vehicle. If we repossess the motor vehicle, you may pay to get it back (redeem). We will tell you how much you need to pay to redeem. Your right to redeem ends when we sell the vehicle unless we inform you of a different deadline to redeem. If you do not redeem, we may sell the Motor Vehicle Collateral at a public or private sale, applying all proceeds from the sale to your obligation after deducting the costs of repossession, repair, storage and sale to the extent permitted by law, and file suit for or otherwise pursue collection from you of all remaining unpaid sums. If any funds remain after applying the net sale proceeds to your obligation, such funds shall be refunded to you. In the event of repossession, sale or legal action, you agree to pay any costs of collection including attorney's fees and court costs to the extent permitted by law. Borrower acknowledges that the use of a recreational vehicle as a primary residence will not affect Farm Bureau Bank's right to repossession of such recreational vehicle in the Event of a Default hereunder, and the same repossession laws will apply to all recreational vehicles acting as Collateral under this Loan Agreement regardless of such recreational vehicle's use.

**MAJOR MECHANICAL PROTECTION AND GUARANTEED ASSET PROTECTION CONTRACTS:** You are not required to purchase Major Mechanical Protection ("MMP") or Guaranteed Asset Protection ("GAP") contracts to obtain this Loan and your decision to purchase or not purchase such MMP or GAP contracts did not affect our decision to make this Loan or the terms of this Loan. If you do choose to purchase either an MMP or a GAP contract (or both), and if we demand that you pay all you owe on the Loan at once or we repossess the motor vehicle included in the Collateral, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe us or repair the motor vehicle. In addition, if we repossess the motor vehicle and it is in need of repairs that are covered by the MMP contract, you agree that we may obtain those repairs under the terms of the MMP contract before cancelling the MMP contract. If we obtain a refund of MMP charges that you paid, you agree that we may subtract the refund from what you owe us.

**WAIVERS AND CONSENTS:** To the extent not prohibited by law, you waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor. In addition, you, to the extent permitted by law, consent to certain actions we may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Loan Agreement. We may use all remedies available under state or federal law or in this Loan Agreement. We may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions. We may make all or any part of the amount owing by the terms of this Loan Agreement immediately due. We may release, substitute or impair any Collateral securing this Loan Agreement. We may make a claim for all insurance benefits or refunds that may be available on your default. We may enter into any sales, repurchases or participations of this Loan Agreement to any person in any amounts and you waive notice of such sales, repurchases or participations. You agree that any person signing this Loan Agreement as a Borrower is authorized to agree with us to modify the terms of this Loan Agreement or any Loan Documents. You waive all claims for loss or damage caused by our acts or omissions where we acted reasonably and in good faith. Where a notice is required, you agree that ten (10) days prior written notice sent by first class mail to your address listed in this Loan Agreement will be reasonable notice to me under the Nevada Uniform Commercial Code. Notice to one party will be deemed to be notice to all parties. Except as otherwise required by law, by choosing any one or more of these remedies we do not give up the right to use any other remedy. We do not waive a default if we choose not to use a remedy. By electing not to use any remedy, we do not waive the right to later consider the event a default and to use any remedies if the default continues or occurs again.

**SET-OFF:** You agree that we may set off any amount due and payable under this Loan Agreement against any right you have to receive money from us. "Right to receive money from us" means (a) your right to any deposit balance you have with us; (b) any money owed to you on an item presented to us or in our possession for collection or exchange; and (c) any non-deposit obligation we have to pay money to you. If your right to receive money from us is also owned by someone who has not agreed to pay this Loan, our right to set-off will apply to your interest in that obligation and to any other amounts you could withdraw on your sole request or endorsement. We may use the money from your accounts with us to pay the debt even if our withdrawal of money from your accounts results in a loss of interest, any interest penalty, dishonor of checks, or transaction charges. The only limitations to the foregoing is that our right of set-off does not apply (1) to funds in a Traditional or Roth IRA or other tax-deferred retirement account, or (2) when your right of withdrawal from the account arises only in a representative capacity.

**GENERAL PROVISIONS:** If two or more Borrowers sign this Loan Agreement, you are liable to repay jointly and severally. This Loan Agreement is the complete and final expression of the agreement, supersedes all prior negotiations, understandings and agreements in regard hereto, and may not be amended or modified by oral agreement. If any provision of this Loan Agreement is unenforceable under law, then the unenforceable provision will be severed, and the remaining provisions will be enforceable. You will inform us by phone, email, writing or fax of any change in your name, address, phone number or other Loan Application information. You will provide us any financial statement or information we request. All financial statements and information you give us must be correct and complete. You agree to sign, deliver, and file any additional documents or certifications that we may consider necessary to perfect, continue, and preserve your obligations under this Loan Agreement and to confirm our lien status on any Collateral.

**GOVERNING LAW:** This Loan Agreement is subject to applicable Federal laws and, to the extent not preempted by Federal law, the laws of the state of Nevada or, if and to the extent required by applicable law, the law where the Collateral is located.

3 of 4                                                                                                     Initial(s) _BI_

**ERRORS AND OMISSIONS:** You agree, if requested by us, to fully cooperate in the correction, if necessary, in all closing Loan Documents so that all documents accurately describe the Loan to you. You agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with our requests within thirty (30) days.

**FINANCIAL AND OTHER INFORMATION:** You agree to supply us with whatever information is reasonably requested. We will make requests for this information without undue frequency and will give you reasonable time in which to supply the information.

**OBTAINING CREDIT INFORMATION:** You authorize us to make any credit, employment, or other investigative inquiries we deem appropriate (including, without limitation, obtaining a consumer report) in connection with our determination to make this Loan, and in the future while any Loan balance is unpaid in order to review or collect on your Loan. Upon your request, we will tell you whether we obtained a consumer report and the names and addresses of any consumer-reporting agencies that provided such reports.

**FURNISHING INFORMATION TO CONSUMER-REPORTING AGENCIES:** If you believe that we have furnished any inaccurate information relating to your account to any consumer-reporting agency, you may notify us by phone or mail using the contact information provided at the top of this Loan Agreement. To help us respond to your notification, you must include your account number, Social Security Number, the name of the consumer-reporting agency reflecting the inaccurate information, and an explanation of why you believe the information is inaccurate. You understand that you may also contact the appropriate consumer-reporting agency directly at the appropriate address and toll-free number: Equifax, P.O. Box 740241, Atlanta, GA 30374, 1.800.685.1111; Trans Union, P.O. Box 1000, Chester, PA 19022, 1.800.916.8800; or Experian, P.O. Box 2002, Allen, TX 75013, 1.888.397.3742.

**NEGATIVE CREDIT REPORTS:** You are hereby notified that a negative credit report reflecting your credit history with us may be submitted to a credit-reporting agency if you fail to fulfill the terms of your credit obligations. Late payments, missed payments, or other defaults on your Loan may be reflected in your credit report.

**COVERED BORROWERS UNDER MILITARY LENDING ACT:** Covered borrowers under Military Lending Act; Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an Annual Percentage Rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account).
Please call our toll-free number 1-800-492-3276 from Monday-Friday, 7am- 7pmCST and Saturday, 8am -12pm CST if you want to hear this disclosure and for a description of your payment schedule before or at the time this Loan becomes established.

**OPTIONAL COLLATERAL PROTECTION PRODUCTS** requested by you and the corresponding cost (applicable boxes are checked):

☐ Major Mechanical Protection (MMP) $0.00              ☐ Guaranteed Asset Protection (GAP) $ 0.00

By signing this Loan Agreement, you agree to purchase the collateral protection product(s) that you have identified above by checking the applicable box or boxes (MMP and/or GAP). Additional information regarding these products will be provided after origination. The purchase of MMP or GAP is **not required** to obtain credit. Your decision to buy or not to buy MMP or GAP was and will not be a factor in our credit approval process. If you choose to purchase MMP or GAP contracts, and if we demand that you pay all you owe on the Loan at once or we repossess the Motor Vehicle Collateral, we use those contracts for our benefit as described in the "Major Mechanical Protection and Guaranteed Asset Protection Contracts" section of this Loan Agreement.

Signing this Loan Agreement 7300741413 , you also acknowledge receipt of a copy of this Loan Agreement. When you finalize the purchase of collateral, you will be required to sign and complete the Funding Form ("Funding Form") that shows the "Amount to Seller," which is the portion of your loan that we will provide to Seller for your purchase of the Collateral described in the Funding Form. Your total Loan Amount, and the Amount Financed reflected on the Truth in Lending Disclosure provided to you, will equal the Amount to Seller and the amounts you have agreed to pay for the purchase of MMP and/or GAP as described above. By signing the Funding Form in the area under the Amount to Seller, you will thereby agree to the Loan Amount and that the Collateral described in the Funding Form is subject to a security interest in favor of Farm Bureau Bank.

---
**Authorization for Direct Payment Via ACH (ACH Debits)**
You have authorized Farm Bureau Bank to electronically debit your account(and, if necessary, electronically credit your account to credit erroneous debits) identified below, based on the terms and amounts described in the Loan Agreement.
Account Number _____      Routing Number _____
**IMPORTANT:** Please verify with your banking institution that the account and routing number above are correct and eligible for automatic debits. This authorization is to remain in full force and effect until you provide mailed, faxed, phone or email notification of its termination in such time an in such manner as to afford us reasonable opportunity to act on it. We reserve the right to cancel automatic payment method upon consecutive returned payments.

---

If signed by Facsimile, you authorize Farm Bureau Bank to accept a facsimile, scanned or other electronic reproduction of your signature as a legal binding signature on the document. If signed electronically, you acknowledge that you are signing this Loan Agreement electronically just as if you had physically signed this Loan Agreement, and you authorize Farm Bureau Bank to accept your electronic signature as a legal binding signature. Signature date is assumed as date documents are returned.

_[signature]_
BOBBY D INGRAM                    Date

4 of 4



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# Farm Bureau Bank

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| | | **Financed Date** | 2/17/2022 |
| | | **Perfected Date** | 2/17/2022 |
| | | **Payoff Date** | |
| **Borrower 1** | BOBBY DAMON INGRAM | | |
| **Borrower 2** | | **Dealer** | |
| **Borrower Address** | | **Dealer Address** | |

### Lienholder

| | |
|---|---|
| **Lienholder** | FARM BUREAU BANK FSB |
| **Lienholder Address** | |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | WDAPF4CD9KP178568 | **Issuance Date** | 2/17/2022 |
| **Title Number** | 770072203285007 | **Received Date** | 2/17/2022 |
| **Title State** | GA | **ELT/Paper** | ELECTRONIC |
| **Year** | 2020 | **Odometer Reading** | |
| **Make** | MERZ | **Branding** | |
| **Model** | | | |
| **Owner 1** | BOBBY DAMON INGRAM | | |
| **Owner 2** | | | |
| **Owner Address** | | | |

**Printed:** Friday, February 18, 2022 5:55:20 AM PST