**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 7 |
| ) | |
| NEW VISION REALTY & INVESTMENTS, ) | |
| INC., ) | Case No. 21-55752-PMB |
| ) | |
| Debtor. ) | |

**OBJECTION TO DEBTOR'S**
**MOTION TO EXTEND THE AUTOMATIC STAY**

COMES NOW, Normandy Capital Trust, a Delaware statutory trust, by and through its trustee, Wilmington Savings Fund Society, FSB, d/b/a Christian Trust ("Lender"), and hereby submits this Objection to the motion of Debtor New Vision Realty & Investments, Inc. ("Debtor") to extend the automatic stay beyond the initial 30 day period (the "Motion to Extend").

For the reasons detailed herein, and as further detailed in Lender's previously filed Motion for Relief from the Automatic Stay, Lender submits that Debtor's Motion to Extend cannot be granted because Debtor has not and cannot overcome or rebut the presumption that it filed this petition in bad faith.

## **TABLE OF CONTENTS**

**Page**

RELEVANT BACKGROUND ............................................................................................... 1

ARGUMENT AND AUTHORITIES ................................................................................... 3

   I.   Debtor's Third Bankruptcy was not filed in good faith and Debtor is not entitled to an extension of the automatic stay. ................................................................................... 3

  II.   Alternatively, if the Court does extend the automatic stay, it should except Lender from the extension and stay. ................................................................................................. 6

CONCLUSION ....................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Baldassaro*,
   338 B.R. 178 (Bankr. D.N.H. 2006) ...................................................................................4, 5

*Bastani v. Wells Fargo Bank, N.A.*,
   960 F.3d 976 (7th Cir. 2020) ..................................................................................................4

*In re Carr*,
   344 B.R. 776 (Bankr. N.D. W.Va. 2006) ...............................................................................4

*In re Galanis*,
   33 4 B.R. 685 (Bankr. D. Utah 2006) ....................................................................................5

*In re Gibas*,
   543 B.R. 570 (Bankr. E.D. Wis. 2016) ..............................................................................4, 6

*In re Goodrich*,
   591 B.R. ..................................................................................................................................4

*In re Goodrich*,
   591 B.R. 538 (Bankr. D. Vt. 2018) ........................................................................................4

*In re Montoya*,
   333 B.R. 449 (Bankr. D. Utah 2005) .....................................................................................4

**Statutes**

§ 362(c)(3) ......................................................................................................................................5

11 U.S.C. § 362(c)(3)(A) ...............................................................................................................3

11 U.S.C. § 362(c)(3)(B) ........................................................................................................3, 4, 6

11 U.S.C. § 362(c)(3)(C) ............................................................................................................3, 4

## RELEVANT BACKGROUND

1. Lender is the owner and holder of that certain Note, Security Instrument, Guaranty, and all other documents further securing, evidencing, or executed in connection with that certain commercial mortgage loan transaction (the "Loan") entered into between Debtor and Patch of Land Lending, LLC ("Original Lender").[1]

2. Upon information and belief, the Property is the sole asset of the Debtor.

3. Debtor defaulted under the Loan Documents when it failed to pay the amounts owed thereunder for September 1, 2019 and thereafter.

4. By letter dated November 6, 2019, Lender notified Debtor that it was in default under the Loan Documents for its failure to make payments due for September, October, and November 2019. Debtor failed to cure its defaults under the Loan Documents. Thereafter, pursuant to its rights under the Loan Documents, Lender elected to accelerate the debt and foreclose on the Property.

5. As of August 3, 2021, the total amount due and owing to Lender under the Loan Documents is $198,377.11.

6. Upon information and belief, the fair market value of the Property does not exceed $175,000.00; thus, there is no equity in the Property for the Debtor.

7. Lender scheduled a foreclosure sale for March 3, 2020 (the "First Sale") and sent the required notice of same to Debtor.

8. On February 27, 2020, Guarantor personally filed a Chapter 13 petition in the Bankruptcy Court for the Northern District of Georgia, case no. 20-63405-wlh ("Guarantor's Bankruptcy"). He was advised that same would not stay foreclosure of the Debtor's property.

---

[1] Lender respectfully refers the Court to its Motion for Stay Relief and the supporting Declaration of Stephen J. Tyde, Jr. previously filed in this action for a detailed history of the Loan and all Loan Documents.

1

Guarantor's Bankruptcy was dismissed by the court on April 30, 2020 for failure to comply with certain deadlines and obligations.

9. On March 3, 2020, at 8:45 a.m., mere *hours* before the First Sale, Debtor filed a Chapter 7 bankruptcy petition (the "First Bankruptcy") in the Bankruptcy Court for the Northern District of Georgia, case no. 20-63876-pmb. Due to the filing of the First Bankruptcy, Lender was forced to cancel the First Sale.

10. On April 16, 2020, the First Bankruptcy was dismissed. No schedules were filed, and the 341 Meeting of the Creditors was never held in the First Bankruptcy.

11. Following the closing of the First Bankruptcy, Lender scheduled a new foreclosure sale for September 1, 2020 (the "Second Sale") and sent the required notice of same to Debtor.

12. On August 31, 2020, Debtor again filed a Chapter 7 petition in the Bankruptcy Court for the Northern District of Georgia, case no. 20-69457-pmb (the "Second Bankruptcy"). Due to the filing of the Second Bankruptcy, Lender was forced to cancel the Second Sale.

13. The Chapter 7 Trustee and counsel for Lender both advised Borrower during the course of the Second Bankruptcy that Borrower should obtain counsel. Borrower failed to obtain counsel at any time.

14. On September 25, 2020, the Second Bankruptcy was dismissed for Debtor's failure to file a statement of financial affairs, schedules, summary of assets and liabilities, and other filings required by the court. The Trustee confirmed that she neither received any property nor paid any monies on account of the estate.

15. The Second Bankruptcy was investigated by the United States Trustee for bad faith.

16. Lender scheduled a new sale for August 3, 2021 (the "Third Sale") and sent the required notice to Debtor.

2

17. On August 2, 2021, Debtor filed the instant Chapter 7 petition in this court (the "Third Bankruptcy"), on the eve of a foreclosure sale. Yet again, Lender was forced to cancel the Third Sale due to the filing of the Third Bankruptcy.

18. Debtor has repeatedly used and abused the bankruptcy court to evade a foreclosure sale and prevent Lender from exercising its rights under the Loan Documents to foreclose on the Property due to Debtor's now nearly two-year default under the Loan Documents.

19. The Third Bankruptcy is presumptively filed in bad faith. *See*, 11 U.S.C. § 362(c)(3)(C).

20. Debtor filed the instant Motion to Extend based on a single statement that because Debtor now has counsel, the Third Bankruptcy is a good faith filing. That is plainly not true and is insufficient to rebut the presumption that the filing was not in good faith.

## ARGUMENT AND AUTHORITIES

**I.    Debtor's Third Bankruptcy was not filed in good faith and Debtor is not entitled to an extension of the automatic stay.**

21. Section 362(c)(3)(A) provides that if a single or joint case is filed by a debtor under Chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding one-year period but was dismissed, the automatic stay with respect to a debt or property securing such debt shall terminate with respect to the debtor on the 30th day after the filing of the later case. *See* 11 U.S.C. § 362(c)(3)(A). Under Section 362(c)(3)(B), on the motion of a party in interest, the court may extend the stay as to "any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing . . . only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed . . . ." 11 U.S.C. § 362(c)(3)(B).

3

22. Further, under Section 362(c)(3)(C), "a case is <u>presumptively</u> filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)" if the debtor had a previous case within such one year period dismissed after the debtor failed to file certain documents without excuse. 11 U.S.C. § 362(c)(3)(C) (emphasis added). *See, e.g.*, *Bastani v. Wells Fargo Bank, N.A.*, 960 F.3d 976, 977 (7th Cir. 2020) (where debtor's previous bankruptcy had been dismissed less than a year prior, there is a "presumption that the new filing is not in good faith").

23. "The Bankruptcy Code does not define 'good faith' for purposes of extending the automatic stay…[and] no perfect analytical carryover from another part of the Code exists regarding the good faith inquiry to be undertaken in section 362(c)(3)(B) cases." *In re Carr*, 344 B.R. 776, 780–81 (Bankr. N.D. W.Va. 2006); *see also*, *In re Baldassaro*, 338 B.R. 178, 187 (Bankr. D.N.H. 2006). Courts should "apply a totality of circumstances analysis to determine whether a repeat filer filed their most recent bankruptcy case not in good faith." *In re Goodrich*, 591 B.R. 538, 548 (Bankr. D. Vt. 2018) (citing 11 U.S.C. § 362(c)(3)(B); *In re Gibas*, 543 B.R. 570, 596–97 (Bankr. E.D. Wis. 2016)).

24. Courts may consider objective and subjective factors in determining a debtor's good or bad faith intentions. In particular, a court may focus on whether the debtor is attempting to eliminate or to satisfy a debt or attempting to target a specific creditor. *In re Goodrich*, 591 B.R. at 553–554; *In re Montoya*, 333 B.R. 449, 459 (Bankr. D. Utah 2005). To rebut the presumption of a filing not in good faith, a debtor "must come froward with evidence to explicate why he filed" the case. *In re Goodrich*, 591 B.R. at 554.

25. Further, a court may consider the debtor's behavior and actions in prior bankruptcy filings, even if not filed and dismissed within a preceding one-year period. *See, e.g.*, *In re Gibas*,

4

543 B.R. 570 (where the instant bankruptcy was filed in 2015, the court still looked back at the history of cases to 2013).

26. Courts should also consider how a debtor's actions affect creditors generally, and the interests of particular or moving creditors. *See, In re Galanis*, 33 4 B.R. 685, 696 (Bankr. D. Utah 2006). Timing of successive filings should also be considered. *See, e.g.*, *In re Baldassaro*, 338 B.R. at 189 ("If the Debtor waited for a significant portion of the one year period imposed by § 362(c)(3) with no intention to remain out of bankruptcy and pay creditors, he would be acting in bad faith") (finding that filing 47 days after dismissal of prior action was indicative of good faith).

27. Here, the instant filing is not only presumptive bad faith, but it is in fact, bad faith. Debtor has filed two previous bankruptcies over the course of the last eighteen months, three including the Guarantor's personal bankruptcy. Each of these were filed on the eve of, if not hours before, a scheduled foreclosure sale of the Property. Each of these was subsequently dismissed for Debtor/Guarantor's various failures to submit documents, schedules, and make court appearances.

28. Debtor filed the instant petition again mere hours before the third scheduled foreclosure sale of the Property. Debtor has no equity in the Property, has not made a payment on the Loan in over two years, and has no reason for filing the instant petition beyond delaying the foreclosure sale. Debtor was advised multiple times to retain counsel previously and did not. Debtor cannot now claim that the instant petition is good faith simply because it retained counsel.

29. Debtor's actions have solely impacted Lender throughout the history of its multiple filings. Lender has lost time and money in scheduling and canceling multiple foreclosure sales while the deficiency on the Loan continues to grow. While filing for bankruptcy to save one's own home from foreclosure may at times be a proper and valid use of the Bankruptcy Code, "it is *not* a proper use of the Code to repeatedly file, and then fail to prosecute, bankruptcy cases on the eve

5

of foreclosure action," as Debtor and Guarantor have done here. *In re Gibas*, 543 B.R. at 598. Moreover, this property is not the Debtor's home – it is investment property owned by the Debtor that the Debtor is not even managing, as Lender is not aware that any rents have been paid in almost a year. Debtor also waited nearly an entire year to file the instant petition; indeed, if Debtor had waited just a short while longer, the one-year period would have expired, and the automatic stay restriction would not have applied. Debtor waited as long as possible, without making payments to bring the Loan current, before filing again only because of the scheduled Third Sale.

**II.     Alternatively, if the Court does extend the automatic stay, it should except Lender from the extension and stay.**

30.    If the Court finds the Third Bankruptcy was filed in good faith, it should only so find as to creditors other than Lender and should except and exempt Lender from the stay and any extension thereof based on prior acts.

31.    Section 362(c)(3)(B) clearly provides the Court with the discretion and ability to impose "conditions or limitations" on an extension of the stay, which may be made to "any or all creditors" subject to the Court's decision.

32.    Even if the Third Bankruptcy was filed in good faith as to other creditors, it was not filed in good faith as to Lender. Debtor has exhibited a pattern of filing bankruptcy petitions on the eve of three foreclosure sales now, which is a blatant and obvious attempt to stop the sale each time. Debtor has not attempted to bring the Loan current and has shown no intent or desire to actually resolve the debt it owes to Lender.

33.    Debtor's excuse of not previously having counsel does not detract from the fact that three bankruptcies now, four counting Guarantor's personal bankruptcy, have been targeted at Lender, and filed with the intention of thwarting Lender from exercising its legitimate and valid foreclosure and collection efforts.

34.     Based on these facts, it is clear that even if Debtor has good intentions otherwise, the Third Bankruptcy was at minimum not filed in good faith as to Lender and Lender should thus be exempt and excepted from any stay and any extension of the automatic stay.

## CONCLUSION

As detailed herein and further detailed in Lender's pending Motion for Stay Relief, Debtor clearly filed the instant petition in bad faith. Debtor's successive, repeat filings, all on the eve of a foreclosure sale noticed by Lender, and all previously dismissed for Debtor and Guarantor's failure to engage in the bankruptcy process, are plain and clear indicia of a filing not in good faith. Debtor has not and cannot overcome or rebut the presumption that this petition was not filed in good faith and Debtor, therefore, is not entitled to any extension of the automatic stay. Alternatively, if the Court finds any good faith on the part of Debtor, it should only so find as to creditors other than Lender, as the instant petition, as shown by prior acts and filings, was filed not in good faith at least as to Lender. Lender therefore should be exempt from any extension of the automatic stay.

Respectfully submitted,

POLSINELLI PC

By:  */s/ Gwendolyn J. Godfrey*
Gwendolyn J. Godfrey
Georgia Bar No. 153004
John R. Morris
Georgia Bar No. 813477
1201 West Peachtree Street NW, Suite 1100
Atlanta, GA 30309
Phone: (404) 253-6029
Email: ggodfrey@polsinelli.com
rmorris@polsinelli.com

COUNSEL FOR LENDER

7

79571870